RECORD NO. 13-1696

In The

# United States Court of Appeals
## For The Fourth Circuit

## PRIORITY AUTO GROUP, INC.,

*Plaintiff – Appellant*,

**v.**

## FORD MOTOR COMPANY,

*Defendant – Appellee*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NORFOLK**

_____

**BRIEF OF APPELLANT**

_____

**Michael G. Charapp**
**Brad D. Weiss**
**CHARAPP & WEISS, LLP**
**8180 Greensboro Drive, Suite 1000**
**McLean, Virginia 22102**
**(703) 564-0220**

*Counsel for Appellant*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __13-1696__    Caption: _Priority Auto Group, Inc. v. Ford Motor Company_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Priority Auto Group, Inc._
(name of party/amicus)

_____

who is _____appellant_____ , makes the following disclosure:
      (appellant/appellee/amicus)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?                               ☐ YES ☑ NO
     If yes, identify all parent corporations, including grandparent and great-grandparent
     corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
     other publicly held entity?                                                   ☐ YES ☑ NO
     If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____ 6/10/2013 _____

Counsel for: Priority Auto Group, Inc.

## CERTIFICATE OF SERVICE
****************************

I certify that on _____ June 10, 2013 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____
        (signature)

_____
6/10/2013
        (date)

07/19/2012
SCC

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION.................................................................................1

INTRODUCTION .........................................................................2

STATEMENT OF THE ISSUES.....................................................2

STATEMENT OF THE CASE.......................................................3

STATEMENT OF THE FACTS .....................................................5

    The Parties ..............................................................................5

    The Kimnach-Priority Asset Purchase Agreement ........................6

    Ford's Improper Exercise of the ROFR and its Assignee, DAC ..................7

    Ford's Rejection of the Kimnach-Ford APA ................................9

    Draft Lawsuit of Ford's Assignee, DAC......................................10

    Negotiated Settlement and Release of Claims.............................11

SUMMARY OF THE ARGUMENT ...............................................12

ARGUMENT .............................................................................13

    STANDARD OF REVIEW .........................................................13

    DISCUSSION OF THE ISSUES ................................................14

        I.    THE DISTRICT COURT ERRED IN HOLDING THAT PRIORITY DOES NOT HAVE STANDING PURSUANT TO VA. CODE § 46.2-1569(3A) ......................14

a.  The District Court erroneously conflated Priority's claims for violations of Va. Code § 46.2-1569 with a claim of violation of Va. Code § 46.2-1569.1 .............14

b.  The Plain Language of Section 46.2-1569(3a) grants Priority Standing ..................................................18

c.  Virginia law requires that the District Court construe Section 46.2-1569(3a) as intended by the Virginia General Assembly .............................................24

II.  PRIORITY HAS CAUSES OF ACTION AGAINST FORD FOR TORTIOUS INTERFERENCE WITH BOTH CONTRACT AND BUSINESS EXPECTANCY ........27

a.  The District Court Erred in Dismissing Counts II and III because Priority Properly Pled Elements for Tortious Interference .......................................................28

b.  The District Court Erred in Not Applying the Standard for Impropriety set forth in Virginia Law .......29

III.  FORD IS NOT A PARTY TO THE ASSET PURCHASE AGREEMENT ....................................................34

a.  The Financial Interest Defense of Restatement (Second) of Torts § 769 is not an absolute privilege .........................................................................34

b.  Persuasive Authority from other states reveals that Ford must prove that it was justified to interfere, which it did not do in the District Court.........................37

CONCLUSION ........................................................................................44

REQUEST FOR ORAL ARGUMENT ..................................................44

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbott v. Willey*,
  253 Va. 88 (1997) ..........................................................................................25

*Barr v. Town & Country Props.*,
  240 Va. 292 (1990) .......................................................................................24

*BBF, Inc. v. Alstom Power, Inc.*,
  274 Va. 326 (2007) .......................................................................................25

*Belena v. Air Line Pilots' Ass'n*,
  31 Va. Cir. 413 (1993) ..................................................................................39

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*,
  974 F.2d 1358 (3d Cir. 1992) ....................................................39, 41, 42, 43

*Bruce v. Riddle*,
  631 F.2d 272 (4th Cir. 1980) ........................................................................14

*Burbach Broadcast. Co. v. Elkins Radio Corp.*,
  278 F.3d 401 (4th Cir. 2002) ..................................................................13, 14

*Chaves v. Johnson*,
  230 Va. 112 (1985) ...............................................................................*passim*

*Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*,
  249 F.3d 204 (4th Cir. 2001) ........................................................................36

*Cupp v. Board of Supervisors*,
  227 Va. 580 (1984) .......................................................................................18

*Davis v. Tazewell Place Assocs.*,
  254 Va. 257 (1997) .......................................................................................25

*Dodge v. Trs. of Randolph-Macon Woman's College*,
276 Va. 10 (2008) ........................................................................24

*Duggin v. Adams*,
234 Va. 221 (1987) ................................................................27, 39

*Dunn, McCormack & MacPherson v. Connolly*,
281 Va. 553 (2011) ......................................................................42

*Edwards v. City of Goldsboro*,
178 F.3d at 243 (4th Cir. 1999) ...................................................14

*Frank Coulson, Inc.-Buick v. General Motors Corp.*,
488 F.2d 202 (5th Cir. 1974) .......................................................35

*Glass v. Glass*,
228 Va. 39 (1984) ..........................................................13, 28, 30

*Leigh Furniture and Carpet Co. v. Isom*,
657 P.2d 293 (Utah 1982)............................................................27

*Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*,
254 Va. 4 (1997) ...................................................................*passim*

*McDonald's Corp. v. Turner-James*,
No. 05-804, 2005 U.S. Dist. LEXIS 42755 (E.D. Va. Nov. 29, 2005).........37

*McKinney v. Anheuser-Busch, Inc.*,
1991 U.S. App. LEXIS 30263 (9th Cir. 1991)....................................*passim*

*Monroe v. First & Fed., Ltd.*,
69 Va. Cir. 475 (Va. Cir. Ct. 2006) ..............................................18

*Morsani v. Major League Baseball*,
663 So.2d 653 (Fla. 2d DCA 1995)..........................................35, 39

*Northside Mercury Sales & Service Inc. v. Ford Motor Co.*,
871 F.2d 758 (1989) ..................................................................39, 40

iv

*Sade Shoe Co. v. Oschin and Snyder*,
162 Cal. App. 3d 1174 (1984) ..........................................................39, 41, 42

*Scheuer v. Rhodes*,
416 U.S. 232 (1974)............................................................................14

*Wachovia Bank, N.A. v. Ranson Tyler Chevrolet, L.L.C. et al.*,
73 Va. Cir. 143 (2007).......................................................................33

*Watkins v. Hall*,
161 Va. 924 (1934) ...........................................................................24

*Worrie v. Boze*,
198 Va. 533 (1956) ...........................................................................27

*Yoder v. Shell Oil Co.*,
405 So. 2d 743 (Fla. 2d DCA 1981)................................................35

## STATUTES

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1332 ......................................................................................1

28 U.S.C. § 1441 ......................................................................................1

28 U.S.C. § 1446 ......................................................................................1

Va. Code § 46.2-1501 .............................................................................26

Va. Code § 46.2-1569 .....................................................................*passim*

Va. Code § 46.2-1569(3) .................................................................*passim*

Va. Code § 46.2-1569(3a)................................................................*passim*

Va. Code § 46.2-1569.1 ...................................................................*passim*

Va. Code § 46.2-1569.1(2) ....................................................22

Va. Code § 46.2-1573 ...........................................................21

**RULES**

Fed. R. App. P. 34(a) ..........................................................44

Fed. R. Civ. P. 12(b)(6)........................................................13

Fed. R. Civ. P. 12(c)............................................................13

**OTHER AUTHORITIES**

2 C. Antieau, Modern Constitutional Law § 15:23 (1969).....................18

Restatement (Second) of Torts § 766 ........................................38, 39, 42

Restatement (Second) of Torts § 766B.......................................38, 39, 42

Restatement (Second) of Torts § 767 ...............................................*passim*

Restatement (Second) of Torts § 769 ........................................34, 36, 37, 38

Restatement (Second) of Torts § 769, Section C....................................13

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____   )
                                      )
**PRIORITY AUTO GROUP, INC.,**        )
                                      )
      **Plaintiff,**          )
                                      )
**v.**                                )          **Action No.: 13-1696**
                                      )
**FORD MOTOR COMPANY**                )
                                      )
      **Defendant.**          )
                                      )
_____   )

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This appeal arises from a civil action in the United States District Court for the Eastern District of Virginia, Norfolk Division involving Priority Auto Group, Inc. ("Priority" or "Appellant") and Ford Motor Company ("Ford" or "Appellee"). The matter was originally filed in the Circuit Court of the City of Norfolk on July 26, 2012. Ford removed the action from Circuit Court of the City of Norfolk to the District Court on August 30, 2012 pursuant to 28 U.S.C. § 1332, 1441, and 1446. On May 15, 2013, the District Court granted Appellee's Motion for Judgment on the Pleadings for Counts I-III against Appellant. Following the final order of the District Court on May 15, 2013, Appellant filed timely notice of appeal on May 29, 2013. Thus, this Court properly has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## INTRODUCTION

This matter concerns the improper rejection of a prospective motor vehicle dealer, Priority, by a motor vehicle manufacturer, Ford, in violation of Virginia's Motor Vehicle Dealer Franchise Laws, Title 46.2, Chapter 15.   Virginia Code Section 46.2-1569(3a) plainly grants Priority standing to bring a claim against Ford for improper rejection.  Ford claims that it exercised a right of first refusal in an attempt to take advantage of an exemption to the statutory requirements.  However, that right of first refusal failed to meet the standards required under Virginia law set forth in Va. Code § 46.2-1569.1 and was ineffective to divest Priority of its rights.  Ford's conduct thus violated Virginia law and tortiously interfered with Priority's rights.

## STATEMENT OF THE ISSUES

1. Did the District Court err in holding that a prospective buyer of a motor vehicle dealership lacks standing to claim that it was improperly rejected in violation of Va. Code § 46.2-1569(3) and (3a) because the basis for its rejection was the exercise by the franchisor of a right of first refusal that did not meet the threshold standard set by statute?

2. Did the District Court err in holding that actions of a franchisor to reject a proposed buyer of a motor vehicle dealership for the franchisor's own

improper purposes does not constitute tortious interference with contract and business expectancy?

3. Did the District Court err in holding that a franchisor that is not a named party to a asset purchase agreement for a motor vehicle dealership has an absolute privilege to interfere with the rights of a proposed buyer because it has a right, limited by law, to approve or disapprove the sale or whether its privilege to consent or to not consent is simply an affirmative defense that must be proven by a franchisor with facts showing that the franchisor's actions were justified and proper?

## STATEMENT OF THE CASE

On July 26, 2012, Priority filed its Complaint against Ford Motor Company ("Ford") in the Circuit Court of the City of Norfolk claiming (I) Violation of Va. Code § 46.2-1569(3a), (II) Tortious Interference with Contract, (III) Tortious Interference with Business Expectancy, and (IV) Violation of Va. Code § 46.2-1569.1 as a result of being improperly rejected as a dealer applicant to purchase the assets and real estate of Kimnach Ford ("Kimnach") as negotiated and agreed upon in the Asset and Real Estate Purchase Agreement entered into September 14, 2010 between Kimnach and Julian Council (Kimnach's Owner, hereinafter referred to as "Council"), as seller, and Priority, as buyer. (J.A. 9-22.) On August 30, 2012, Ford filed its Answer to the Complaint as well as a Notice of Removal to the

3

District Court. (J.A. 23-31; D.E. 2.) On October 16, 2012, Ford filed a Motion for Partial Judgment on the Pleadings for dismissal of Counts I, II, and III of the Complaint. (D.E. 13 and 14.) At the time of Ford's filing the Motion for Partial Judgment on the Pleadings and accompanying Memorandum in Support (D.E. 13 and 14), the parties had only filed a Complaint, Answer, and Notice of Removal. (J.A. 9-22; J.A. 23-31; D.E. 2.) However, in support of its Motion, Ford attached documents that were outside the pleadings, notably the Sales and Service Agreement between Ford and Kimnach Ford and the Asset and Real Estate Purchase Agreement between Kimnach and Dealer Acquisition Company ("DAC"). (D.E. 14; J.A. 100-180; J.A. 184-262.) Priority filed its Opposition to Ford's Motion for Partial Judgment on the Pleadings on October 29, 2012. (D.E. 16.) The Motion for Partial Judgment on the Pleadings was referred to the Magistrate on November 6, 2012. (J.A. 307-308.) The Motion for Partial Judgment on the Pleadings and Opposition were argued before the Magistrate on January 10, 2013 and the arguments were taken under advisement. (J.A. 309-370.)

On March 8, 2013, Ford filed a Motion for Summary Judgment on Counts I, II, and III of the Complaint. (D.E. 29, 30, and 31.) On March 22, 2013, Priority filed its Opposition to Ford's Motion for Summary Judgment. (D.E. 34, 35, and 36.) The Motion for Summary Judgment and Opposition were referred to the

4

Magistrate on March 29, 2013, as well as Ford's Request for a Hearing on its Motion for Summary Judgment. (J.A. 929-930; J.A. 931-934; D.E. 39.)

On April 1, 2013, the Magistrate issued his Report recommending that the Court grant Ford's Motion for Partial Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (J.A. 935-963.) The parties reached a settlement as to Count IV of the Complaint and filed a Joint Stipulation and Dismissal on April 12, 2013 dismissing Count IV with prejudice. (J.A. 964.) Priority filed its objections to the Report and Recommendation on April 17, 2013 as well as a Motion to Certify Questions to the Supreme Court of Virginia. (D.E. 51, 52, and 53.) On May 15, 2013, the U.S. District Court for the Eastern District of Virginia issued its Final Order granting Ford's motion for partial judgment on the pleadings and dismissed Counts I through III of the complaint with prejudice. (J.A. 967-971.) Moreover, the Court's Final Order entered on May 15, 2013 also denied Priority's motion to certify questions to the Supreme Court of Virginia. (J.A. 967-971.)

## STATEMENT OF THE FACTS

### *The Parties*

Priority is a Virginia corporation registered in good standing to conduct business in the Commonwealth of Virginia with its principal place of address located at 1800 Greenbrier Parkway, Chesapeake, Virginia 23320. (J.A. 10.) Ford

is a motor vehicle manufacturer registered as a Delaware corporation with locations throughout the United States, and it maintains a registered agent and office at CT Corporation System, 4701 Cox Road, Suite 301, Glen Allen, Virginia 23060-6802. (J.A. 10-11.) Priority's majority owner is Dennis Ellmer, who is majority owner of 11 different new motor vehicle dealerships making Priority one of the top 60 dealer companies in the country. (J.A. 438-439.)

### The Kimnach-Priority Asset Purchase Agreement

Kimnach Ford, Inc. ("Kimnach" or "Seller") operated as a Ford dealership located at 6401 E. Virginia Beach Boulevard, Norfolk, Virginia 23502 for 55 years pursuant to a Sales and Service Agreement with Ford. (J.A. 11; J.A. 178.) On September 14, 2010, Priority as buyer and Kimnach and its President Council as seller entered into an asset and real estate purchase agreement whereby Priority agreed to purchase the operating assets of the business of Kimnach and the real estate on which the business operated with the intention of owning and operating a Ford dealership ("Dealership") at the same location (the "Kimnach-Priority APA"). (J.A. 32-99; J.A. 443-444.)

The Kimnach-Priority APA was negotiated on behalf of Priority primarily by Dennis Ellmer, its CEO and by Julian Council on behalf of Kimnach. (J.A. 400-401; J.A. 439-444.) The Kimnach-Priority APA provided in addition to terms standard for a dealership APA that: Priority would pay Four Million Five Hundred

Thousand Dollars ($4,500,000) for the Dealership Property ("Dealership Property Purchase Price") (J.A. 41); Priority would enter into a Guaranteed Consulting Agreement, ("Consulting Agreement"), providing Council an opportunity to provide guidance, input, and advice in the Ford dealership controlled by Priority (J.A. 51; J.A. 88-91); Priority would provide Council a ten percent (10%) equity interest in the Ford dealership pursuant to a Subscription Agreement and Stockholder's Agreement (J.A. 50; J.A. 80-87); Priority would hire certain critical Kimnach employees and provide them continuing employment opportunities, and Priority intended to provide employment opportunities for the other Kimnach employees (J.A. 48-49; J.A. 78); and Priority would provide to Mr. Council the use of motor vehicles. (J.A. 88; J.A. 403.)

As a result of the opportunities Council had because of the stock ownership, he was willing to take a goodwill value for the dealership of only $1.00. (J.A. 36.) However, this was only because the opportunities to work in the business and own an interest in the business provided him very lucrative opportunities. (J.A. 375; J.A. 411; J.A. 438-439; J.A. 442; J.A. 464).

### Ford's Improper Exercise of the ROFR and its Assignee, DAC

The Kimnach-Priority APA was conditioned on approval by Ford of Priority as a franchisee pursuant to Virginia law. (J.A. 461.)    As a result, Kimnach submitted the Kimnach-Priority APA to Ford with a request that it provide a dealer

application to Priority, and Ford received that on September 16, 2010. (J.A. 181; J.A. 470.)

Thirty-three days later, Ford sent Kimnach a letter dated October 19, 2010 stating that Ford had assigned its Right of First Refusal ("ROFR") to Dealership Acquisition Company, LLC ("DAC") and that Ford was exercising the ROFR to assume the Kimnach-Priority APA. (J.A. 182.) At the same time, it sent a letter to Priority notifying it that its application to become a Ford dealer was rejected solely because Ford was exercising its right of first refusal ("Rejection Letter"). (J.A. 183.)

Ford, however, never intended to perform and close under the Kimnach-Priority APA. (J.A. 382; J.A. 395-397; J.A. 553-555.) In fact, Ford intended to eliminate the Kimnach-Priority APA and to renegotiate a deal more to its benefit. Ford wanted the dealer point closed and never had the intent to honor the Kimnach-Priority APA.[1] (J.A. 380-381; J.A. 395-397; J.A. 553; J.A. 729-731.)

---

[1] The Email between Ford executives and personnel (J.A. 553) states

> "requesting your approval to act with our three dealers in the Norfolk, Virginia MP to exercise our ROFR and close Kimnach Ford"… "We propose to exercise our ROFR to purchase Kimnach Ford and immediately assign our rights (and liabilities) to the three existing Ford dealers in the market (Beach Ford, Freedom Ford, and Cavalier Ford) to complete the buy-sell and then close the dealership.

Ford assigned its ROFR to DAC with full knowledge and intent that its assignee could never nor would it ever provide Kimnach and Council with the same consideration they were to receive under the Kimnach-Priority APA. (J.A. 533-536; J.A. 538-540.) DAC was an entity formed on October 1, 2010 by three Kimnach competitor Ford dealers, Freedom Ford, Inc., Greenbrier Ford, Inc., and Beach Ford, Inc., "for the purpose of acquiring Kimnach's Ford automobile dealership" and upon purchase of Kimnach, DAC was never going to operate Kimnach as a Ford Dealership. (J.A. 284-306; J.A. 543-544.) Ford's plan was to close the dealer point and distribute Ford customer names amongst Kimnach's three competitors as well as redistribute a proportionate share of Kimnach parts inventory and remaining 2010 and 2011 new model Ford inventory. (J.A. 548-551.)

**Ford's Rejection of the Kimnach-Ford APA**

Since Kimnach's assigned buyer, DAC, would no longer be an automobile dealership and a party to a Ford Sales and Service Agreement ("SSA"), Kimnach and Council immediately raised issues with Ford and DAC because DAC could not

provide Kimnach with the same or greater consideration that it had entered into and agreed upon with Priority. (J.A. 589-717[2]; J.A. 719-721.)

Once Ford had Priority out of the picture, Ford through its assignee presented inferior offers to Kimnach and Council (that they rejected), substituting much lower monetary offers in lieu of Council's rights to continued ownership in a car dealership and in lieu of providing the continued employment in the car business or opportunity for the upside of an equity interest in a successful car dealership. (J.A. 384-388; J.A. 719-744.)

### *Draft Lawsuit of Ford's Assignee, DAC*

As a result of Kimnach's April 14, 2011 rejection letter to DAC and statement that Kimnnach was moving forward with the sale of Kimnach to Priority (J.A. 742-744), DAC sent a letter with an attached draft complaint to Kimnach on April 21, 2011, which threatened legal action against Kimnach and an injunction against Priority in order to prevent Kimnach from selling to Priority, if Kimnach did not agree to close within 45 days of April 21, 2011 and demanding acknowledgment within 5 days that Kimnach would close. (J.A. 280-306.) Ford was copied on the letter with attached draft lawsuit. (J.A. 283.)

---

[2] Ford's exercise of the ROFR resulted in the Kimnach-DAC APA #1, dated October 19, 2010 and signed by DAC members. (J.A. 589-717.) The Subscription and Joinder Agreement gave Council a 10.00% Membership Interest in DAC, which would not have any assets or operating capital as well as a consulting agreement with a non-operating entity. (J.A. 706-710)

The threatened lawsuit sought to compel Kimnach to close by receiving 10% equity in DAC or in the alternative, if the court found that the 10% equity interest in DAC did not constitute "the same terms and conditions" or would not result in Council "receiving the same or greater consideration," then the Court should enter an order compelling Kimnach to close by accepting DAC's payment of the appraised value of the 10% equity interest of Priority's assignee in lieu of providing the 10% interest in Priority's Assignee, with such value to be determined by the Court. (J.A. 284-306.) The intention of the lawsuit was to force Kimnach and Council to settle the dispute and to agree to the DAC offer so that Ford could terminate the dealership. (J.A. 746.)

Ford financially supported DAC's efforts to work on behalf of Ford to acquire Kimnach and close down the dealership. (J.A. 471-476; J.A. 479-481; J.A. 489-491; J.A. 495-496; J.A. 502; J.A. 510-517; J.A. 908-911; J.A. 917-928.) To ensure that the point closed, Ford committed ultimately $2,835,500.00 toward the point closure. (J.A. 478; J.A. 908-911; J.A. 918-928.)

### Negotiated Settlement and Release of Claims

On May 13, 2011, the parties had reached a settlement to the dispute and potential litigation, which was memorialized in the

> draft Settlement Agreement and Release, which attaches as an exhibit a new Asset and Real Estate Purchase Agreement between Kimnach Ford, Inc. and Dealership Acquisition Corporation, LLC, which documents we

11

propose to govern the sale of the Kimnach Ford dealership.

(J.A. 749-801.)

On June 29, 2011, Kimnach entered into an asset purchase agreement with DAC ("Kimnach-DAC APA #2")[3] which was an exhibit to the Settlement Agreement and Release signed on July 15, 2011. (J.A. 814-821; J.A. 806; J.A. 815.) But the terms of the Settlement Agreement and Release were agreed upon on May 23, 2011. (J.A. 803-812.) The Kimnach-DAC APA #2 was a result of settling a dispute and not the result of an exercise of the right of first refusal, but Mr. Council believed that it still failed to provide the "same or better consideration" that he was entitled to. (J.A. 402-405.)

## SUMMARY OF THE ARGUMENT

Virginia law specifically gives Priority standing as a prospective dealer to sue Ford for violation of Va. Code § 46.2-1569(3) and (3a) for improper rejection. Va. Code § 46.2-1569(3a) provides that a manufacturer is not in violation of Va. Code § 46.2-1569(3) and (3a) if the rejection is a result of a right of first refusal that is "pursuant to § 46.2-1569.1." See § 46.2-1569(3a). However, that requires that the right of first refusal exercised by Ford actually meet the standards set forth in § 46.2-1569.1, which Ford failed to do in this case. Since Ford's exercise of the right of first refusal fails to meet the statutory standards set forth in § 46.2-1569.1,

---

[3] J.A. 184-262.

12

Ford's rejection of Priority as a result of an invalid exercise violates § 46.2-1569(3a).

Virginia law provides Priority with the right to sue Ford for tortious interference with a contract and prospective business expectancy, if the interference was improper and tortious. *See Chaves v. Johnson*, 230 Va. 112, 120 (Va. 1985); *Glass v. Glass*, 228 Va. 39, 51 (1984). Ford cannot claim that it was a party to the Kimnach-Priority APA just because it had a right to approve the transfer. *See* J.A. 32-99; *McKinney v. Anheuser-Busch, Inc.*, 1991 U.S. App. LEXIS 30263 (9th Cir. 1991). Ford's right of approval is neither an absolute privilege nor a shield to protect the actions of a manufacturer from being improper and tortious, which Ford's actions were in this case. Whether Ford even had such a privilege in this matter is a matter of proof rather than pleading. *See* Restatement (Second) of Torts § 769, Section C.

## ARGUMENT

## STANDARD OF REVIEW

This Court reviews District Court decisions "to grant judgment on the pleadings *de novo*, applying the same standard for Rule 12(c) motions as for motions made pursuant to Rule 12(b)(6)." *Burbach Broadcast. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002). In its *de novo* review, this Court assumes that "the facts alleged in the complaint are true and draw[s] all reasonable

factual inferences in [the Appellant's] favor." *Id.* (citing *Edwards v. City of Goldsboro*, 178 F.3d at 243 (4th Cir. 1999)).  To uphold the dismissal, the court "must find beyond a doubt that the plaintiff could prove no set of facts in support of his claim which would entitle him to relief."  *Bruce v. Riddle*, 631 F.2d 272, 273-74 (4th Cir. 1980) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  In this matter, Priority can clearly prove facts to support its claims.  In addition, Ford injected matters outside the pleadings into its motion for partial judgment on the pleadings, thus making all matters in the record appropriate for consideration in this appeal.

## DISCUSSION OF THE ISSUES

    I.    <u>THE DISTRICT COURT ERRED IN HOLDING THAT PRIORITY DOES NOT HAVE STANDING PURSUANT TO VA. CODE § 46.2-1569(3A)</u>

        *a. The District Court erroneously conflated Priority's claims for violations of Va. Code § 46.2-1569 with a claim of violation of Va. Code § 46.2-1569.1*

Count I of Priority's Complaint against Ford seeks damages for Ford's improper rejection of Priority as the proposed buyer of Kimnach in violation of Va. Code § 46.2-1569(3) and (3a).  (J.A. 15-18.)  It is not a claim for damages for Ford's violation of Va. Code § 46.2-1569.1 because of its faulty exercise of a right of first refusal.  The District Court, in adopting the Magistrate's Report and Recommendation, improperly concluded that in order for Priority to have standing

14

under Count I, it must be able to sustain an action in under § 46.2-1569.1, and since it is not the seller, it would not be able to sustain the action in Count I under § 46.2-1569.1. (J.A. 935-963; JA. 967-971.) However, Priority's claim against Ford is not whether it violated § 46.2-1569.1, but whether it improperly rejected Priority as a dealer applicant in violation of Va. Code § 46.2-1569(3) and (3a). (J.A. 15-18.)

The District Court held that Priority has no standing under § 46.2-1569.1 to examine the consideration ultimately provided by Ford's assignee to the Seller so Priority has no standing under § 46.2-1569(3a). (J.A. 970-971.) However, the case that was before the District Court was not whether Priority can bring a claim for violation of § 46.2-1569.1, but whether Priority was improperly rejected as a dealer applicant in violation of § 46.2-1569(3) and (3a). *See* J.A. 9-22. Priority's complaint properly pled improper rejection of a dealer applicant in violation of both § 46.2-1569(3) and § 46.2-1569(3a). (J.A. 15-18.) Moreover, as detailed in Priority's oppositions to Ford's motions (D.E. 13-14 and 29-31), the facts prove that claim. (D.E. 16 and 34).

The issue is not whether Priority has standing under § 46.2-1569.1 to bring suit, but whether Ford's exercise of the right of first refusal met the standard of § 46.2-1569.1 in order for that exercise to provide an exception under § 46.2-1569(3a). Evidenced by Ford's own attachment to its Motion for Partial Judgment

15

on the Pleadings and the facts (J.A. 184-262; J.A. 280-306; J.A. J.A. 384-388; J.A. 719-744), Ford through its assignee DAC used the right of first refusal to improperly reject Priority and renegotiate the deal between Kimnach and Ford's assignee initially for a fraction of the Priority-Kimnach deal and ultimately for less consideration under a settlement agreement to prevent Kimnach from suing Ford. (J.A. 184-262; J.A. 402-405; J.A. 749-812; J.A. 814-821.)  Since the exercise of the ROFR was not valid, evidenced by Ford's assignee (DAC) having to draft another Asset and Real Estate Purchase Agreement many months later pursuant to a settlement of the seller's claims (J.A. 184-262), Ford no longer was entitled to the exception afforded it under § 46.2-1569.1 for its improper rejection of Priority in violation of § 46.2-1569(3a).

By converting the standard for validity of exercise of a right of first refusal under § 46.2-1569(3a) into a requirement for standing under section § 46.2-1569.1, the District Court's holding deviates from the clear language of § 46.2-1569(3a). (J.A. 935-963; J.A. 967-971.)  The General Assembly's clear intent in § 46.2-1569(3) and (3a) was to provide standing to a buyer who is improperly rejected by a franchisor to bring a legal action to challenge the rejection. The exception from that is an exercise of the right of first refusal, but only if that exercise met the standard set by § 46.2-1569.1. By injecting a new requirement that a buyer must have standing under § 46.2-1569.1 to challenge the consideration paid, the holding

16

frustrates the intent of the General Assembly in fashioning § 46.2-1569(3) and (3a).

The District Court's dismissal establishes precedent for franchisor actions that § 46.2-1569(3) and (3a) were specifically designed to prevent. Based on clear legislative design, the General Assembly intended that a franchisor should not have the right to refuse the application of a buyer for approval to purchase a motor vehicle dealership unless specific delineated standards are met – those in Virginia Code § 46.2-1569(3) or that there is an exercise of a ROFR meeting designated standards.    The legislative design does not permit a franchisor to evade those requirements through a nominal exercise of a right of first refusal, with no intention to comply with Va. Code § 46.2-1569.1.  If that is permitted, a franchisor simply has to claim to exercise the ROFR, commence renegotiations with the seller, grind that seller into submission as Ford did here, and achieve its goal of rejecting a worthy applicant (which actions in this case had the simultaneous benefit of allowing Ford to reach its goal of shutting down a dealership which it never could have done had the existing dealer not agreed to sell to Priority.)

The District Court's dismissal essentially grants manufacturers the ability to fabricate an exercise of the right of first refusal to escape liability for an improper rejection of a prospective dealer pursuant to § 46.2-1569(3) and § 46.2-1569(3a). The District Court's dismissal of Count I essentially nullifies the General

17

Assembly's intent when it enacted § 46.2-1569(3) and (3a), and this Court should not adopt it.

### b. The Plain Language of Section 46.2-1569(3a) grants Priority Standing

The Supreme Court of Virginia has stated that the "concept of standing concerns itself with the characteristics of the person or entity who files suit." *See Cupp v. Board of Supervisors*, 227 Va. 580, 589 (Va. 1984). Standing requires that the person asserting a position have a substantial legal right to do so and that the right will be affected by the disposition of the case. *See Cupp*, 227 Va. at 589 (citing 2 C. Antieau, Modern Constitutional Law § 15:23 (1969)). In determining whether a person has standing, in essence, the court must determine if the plaintiff "has a sufficient interest in the subject matter of the case so that the parties will be actual adversaries and the issues will be fully and faithfully developed." *See Cupp*, 227 Va. at 589.

Section 46.2-1569(3a) explicitly grants Priority a right of action because the statute states that a manufacturer that violates the statute may be sued for damages suffered as a result of such violation. *See generally*, *Monroe v. First & Fed., Ltd.*, 69 Va. Cir. 475, 476 (Va. Cir. Ct. 2006) (which held that "Indeed, the statute specifically states that any person who fails to comply with the statute 'shall be liable for all damages caused by' such failure. This is in addition to a civil

18

'penalty.' The court cannot imagine how the legislature could have been clearer in creating a private right to sue.").

The Virginia General Assembly, in section 46.2-1569(3a), specifically provided both the selling dealer and the buying applicant rights to bring causes of action against a manufacturer in the event it violates Virginia Code § 46.2-1569(3a). A selling dealer may bring a cause of action against a manufacturer for violations of 46.2-1569(3a) by requesting "review of the action or imposition of the condition in a hearing by the Commissioner." *See Id*. Alternatively,

> If the existing dealer does not request a hearing by the Commissioner concerning the action or the condition imposed by the manufacturer, factory branch, distributor, or distributor branch, and the action or condition was the proximate cause of the failure of the contract for the sale or transfer of ownership of the dealership, the applicant for approval of the sale or transfer or the existing dealer, or both, may commence an action at law for violation of this section. The action may be commenced in the circuit court of the city or county in which the dealer is located, or in any other circuit court with permissible venue, within two years following the action or the imposition of the condition by the manufacturer, factory branch, distributor, or distributor branch for the damages suffered by the applicant or the dealer as a result of the violation of this section by the manufacturer, factory branch, distributor, or distributor branch, plus the applicant's or dealer's reasonable attorney fees and costs of litigation.

*Id*. (emphasis added).

Priority was an applicant for approval of the sale of Kimnach, within the meaning of section 46.2-1569(3a). *See* J.A. 11; J.A. 13; J.A. 24-25; J.A. 419-430.

Ford is a manufacturer within the meaning of section 46.2-1569(3a). *See* J.A. 10-11; J.A. 23. The Virginia Motor Vehicle Franchise law restricts the manner and grounds upon which a manufacturer may properly reject a dealer applicant for the sale or transfer of a dealership. Pursuant to VA Code § 46.2-1569(3a), the manufacturer has only two grounds by which it can properly reject a dealer applicant: (1) based on the grounds stated in § 46.2-1569(3) or (2) a lawful exercise of the right of first refusal "pursuant to Va. Code § 46.2-1569.1." If either or both of those standards are not met, the proposed buyer must be considered illegally rejected in violation of § 46.2-1569(3) and (3a).

With respect to Priority's application to be a franchisee of Ford, section 46.2-1569(3), states in pertinent part that:

> Notwithstanding the terms of any franchise agreement, it shall be unlawful for any manufacturer, factory branch, distributor, or distributor branch, or any field representative, officer, agent, or their representatives:
>
>            ***
>
> (3) To prevent or refuse to approve the sale or transfer of the ownership of a dealership by the sale of the business, stock transfer, or otherwise, or the transfer, sale, or assignment of a dealer franchise, or a change in the executive management or principal operator of the dealership, unless the franchisor provides written notice to the dealer of its objection and the reasons therefor by certified mail or overnight delivery or other method designed to ensure delivery to the dealer at least 30 days prior to the proposed effective date of the transfer, sale, assignment, or change. **No such objection shall be sufficient unless the failure to approve is reasonable.** Notwithstanding the provisions of subsection D of

20

§ 46.2-1573, **the only grounds that may be considered reasonable for a failure to approve are that an individual who is the applicant or is in control of an entity that is an applicant (i) lacks good moral character, (ii) lacks reasonable motor vehicle dealership management experience and qualifications, (iii) lacks financial ability to be the dealer, or (iv) fails to meet the standards otherwise established by this title to be a dealer**…

Va. Code § 46.2-1569(3) (emphasis added).

Ford admittedly did not provide any statement that meets the specific grounds stated in section 46.2-1569(3) because "Priority was not approved by Ford because Ford elected to exercise its contractual right of first refusal." *See* J.A. 25. Moreover, Ford admits that it sent Priority a letter on November 2, 2010 in which Ford stated that it "has high regard for you [Priority] as a dealer candidate and we would like very much to find another opportunity for you to become a Ford dealer." *See* J.A. 25; J.A 519. The pleadings prove that in failing to approve Ford for the sale of Kimnach, Ford did not provide a statement of specific grounds for doing so that is consistent with section 46.2-1569(3).

Under § 46.2-1569(3a), it is a violation for a manufacturer to impose a condition on the approval of the sale or transfer of the ownership of a dealership if the condition would violate § 46.2-1569 if imposed on the existing dealer. Va. Code § 46.2-1569(3a). An exception to § 46.2-1569(3) and § 46.2-1569(3a) is an exercise of the right of first refusal "pursuant to § 46.2-1569.1." Va. Code § 46.2-

21

1569(3a).  Section 46.2-1569(3a) provides the standard by which the manufacturer has to exercise the right of first refusal.  If such a standard is not met, the exercise of the right of first refusal no longer serves as an exception for violations of § 46.2-1569(3) and § 46.2-1569(3a).   See § 46.2-1569(3a).

Section 46.2-1569.1, pertinent in part, regulating the right of first refusal of a motor vehicle manufacturer states:

> Notwithstanding the terms of any franchise agreement, in the event of a proposed sale or transfer of a dealership, the manufacturer or distributor shall be permitted to exercise a right of first refusal to acquire the new vehicle dealer's assets or ownership, if such sale or transfer is conditioned upon the manufacturer's or dealer's entering into a dealer agreement with the proposed new owner or transferee, only if all the following requirements are met:
> ***
> 2. The exercise of the right of first refusal will result in the dealer's and dealer's owner's receiving the same or greater consideration as they have contracted to receive in connection with the proposed change of ownership or transfer;

Va. Code § 46.2-1569.1(2) (emphasis added).

Priority contends that Ford's purported exercise of a ROFR does not meet the requirements stated in section 46.2-1569.1 because the exercise neither resulted in, nor could it have resulted in, the same or greater consideration provided in the Kimnach-Priority APA.  *See* J.A. 184-262; J.A. 280-306; J.A. J.A. 384-388; J.A. 402-405; J.A. 719-744.    Ford assigned its right to perform and settle on the Kimnach-Priority APA to DAC with the express purpose of acquiring and closing

Kimnach. *See* J.A. 14; J.A. 25; J.A. 380-382, J.A. 395-397,  J.A. 553-555; J.A. 729-731.   A closed dealership could not provide "the same or greater consideration" as provided in the Kimnach-Priority APA because: (1) the bargained for equity interest Council was going to receive in Priority's company, which would own and operate the Ford dealership, was significantly greater than the little or no value of the equity interest in DAC, which would not operate a Ford dealership; (2) Council would remain employed in the retail auto business owned by Priority's Ford company, which is significantly greater consideration than employment with DAC, which would not operate a car dealership; and (3) Priority guaranteed at least three key identified employees employment at the dealership that would be owned and operated by Priority's company, with the discretion to hire the remaining Kimnach employees, which is significantly greater consideration than DAC could provide since it would not operate a dealership.  *See* J.A. 9-22.  Moreover, Ford admits that the "same or greater consideration" could never have resulted from the exercise of the right of first refusal because "a terminated Ford dealership would not normally require employees or conduct operations."  *See* J.A. 26; J.A. 402-405.

Moreover, "Ford admits that Priority was not approved by Ford because Ford elected to exercise its contractual right of first refusal."  *See* J.A. 25.  But Ford's actions were not a valid exercise of its right of first refusal because the

purported exercise did not meet the requirements of section 46.2-1569.1. *See* J.A. 184-262; J.A. 280-306; J.A. J.A. 384-388; J.A. 402-405; J.A. 719-744; J.A. 749-801; J.A. 814-821. In essence, Ford imposed a condition prohibited under section 46.2-1569(3a) (exercise of the right of first refusal in a way prohibited by Virginia law), which was the proximate cause of the elimination of Priority's rights under the Kimnach-Priority APA. Therefore, pursuant to section 46.2-1569(3a), Priority has standing to bring an action as a result of Ford's imposition of the improper condition that led to damages suffered by Priority as a result of Ford's violation of section 46.2-1569(3a).

> c. *Virginia law requires that the District Court construe Section 46.2-1569(3a) as intended by the Virginia General Assembly*

The Virginia Supreme Court has repeatedly stated the principles of statutory construction be applied when a statute is clear and unambiguous as:

> "While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed."

*See Dodge v. Trs. of Randolph-Macon Woman's College*, 276 Va. 10, 15-16 (Va. 2008) (citing *Barr v. Town & Country Props.*, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting *Watkins v. Hall*, 161 Va. 924, 930, 172 S.E. 445, 447 (1934));

accord *Davis v. Tazewell Place Assocs.*, 254 Va. 257, 260-61, 492 S.E.2d 162, 164 (1997*); Abbott v. Willey*, 253 Va. 88, 91, 479 S.E.2d 528, 529 (1997). Moreover, "[i]n construing a statute, we must apply its plain meaning, and we are not free to add language, nor ignore language, contained in statutes." *See Dodge*, 276 Va. at 16 (quoting *BBF, Inc. v. Alstom Power, Inc.*, 274 Va. 326, 331, 645 S.E.2d 467, 469 (2007)).

The District Court was obligated to apply the law within the jurisdiction in which this matter was originally filed, which was Virginia. Interpreting standing under § 46.2-1569(3a) based on holdings from other states with statutory language that is not similar, not only violates the Virginia legal standard for statutory construction, but it contradicts the clear and unambiguous language of § 46.2-1569(3a).

The District Court's judgment speculates what the Supreme Court of Virginia would do in interpreting the phrase setting the standard that a franchisor must meet for benefit of the ROFR exception under § 46.2-1569(3a). The judgment injects a requirement for the buyer to have standing only if the buyer could maintain an action for the franchisor's violation to § 46.2-1569.1. *See* J.A. 947-953. But the ROFR exception language in § 46.2-1569(3a), on its face, simply sets a standard. Since motor vehicle franchisors generally have a contractual right of first refusal and also a statutory right of first refusal pursuant to

§ 46.2-1569.1[4], if the General Assembly's intent was to provide franchisors with the unlimited privilege to exercise a right of first refusal without having to meet the statutory grounds, then subsection 3a would just read "pursuant to a right of first refusal." However, the General Assembly's intent from the face of the statute was clearly for the prospective buyer to have claims pursuant to § 46.2-1569(3a) against a manufacturer if the franchisor failed to approve the proposed buyer because the ROFR exercise failed to meet the standard of § 46.2-1569.1. Furthermore, in enacting subsection 3a, the Legislature was furthering the purpose of the Virginia Motor Vehicle Franchise Act, which is to "promote the interest of the retail buyers of motor vehicles and endeavor to prevent unfair methods of competition and unfair or deceptive acts or practices." See § 46.2-1501.

Based on the foregoing, Priority has standing to bring an action against Ford for violation of section 46.2-1569(3a). Ford refused to approve the purchase of Kimnach Ford without a specific statement that is consistent with the grounds stated in section 46.2-1569(3). And Ford imposed a condition prohibited under section 46.2-1569(3) because of its exercise of a right of first refusal that did not meet the requirements of section 46.2-1569.1. The plain language of the statute grants Priority standing to bring its claims against Ford for such violations of section 46.2-1569(3a). To determine otherwise would be a direct contradiction of

---

[4] The SSA provided a contractual right of first refusal in this matter, which is typical in this type of transaction. *See* J.A. 178.

the established law of Virginia and against the General Assembly's legislative intent when it enacted section 46.2-1569(3a).

## II. PRIORITY HAS CAUSES OF ACTION AGAINST FORD FOR TORTIOUS INTERFERENCE WITH BOTH CONTRACT AND BUSINESS EXPECTANCY

The District Court's holding dismissal of Counts II and III contradicts Virginia law on intentional interference with contract and business expectancy.

> It is well settled that the right to performance of a contract and the right to reap profits therefrom are property rights which are entitled to protection in the courts.

*Chaves v. Johnson*, 230 Va. 112, 120 (Va. 1985) (quoting *Worrie v. Boze*, 198 Va. 533, 536 (1956)).

The District Court summarily concludes that the Virginia Supreme Court would hold that a franchisor could improperly reject dealer applicants and not be held liable for that improper interference. *See* J.A. 959. There is no case under Virginia law that holds this, and its holding contradicts other Virginia cases that have held that one can maintain causes of action for intentional interference when improper means are used.[5]

---

[5] In Virginia, a plaintiff may maintain an action for intentional interference with a contractual expectancy by alleging that the defendant employed "improper methods." *See Duggin v. Adams*, 234 Va. 221, 226-27, 360 S.E.2d 832, 836 (1987). In Virginia, methods considered "improper" include those that are "illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules." *Id*. at 227 (citing *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 308 (Utah 1982)).

> *a. The District Court Erred in Dismissing Counts II and III because Priority Properly Pled Elements for Tortious Interference*

Priority properly pled Counts II and III for tortious interference with contract and business expectancy. (J.A. 18-20.) In Virginia, in order to state a valid claim for tortious inference with a contract, the plaintiff must prove the following elements: 1) the existence of a valid contractual relationship or business expectancy; 2) knowledge of the relationship or expectancy on the part of the interferor; 3) intentional interference inducing or causing a breach or termination of the contractual relationship or expectancy; and 4) resultant damages to the party whose relationship or expectancy has been disrupted. *Chaves v. Johnson*, 230 Va. 112 (Va. 1985). Similarly, in order to state a valid claim for tortious interference with a business expectancy, a plaintiff must establish the following elements: 1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; 2) defendant's knowledge of the relationship or expectancy; 3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and 4) damage to plaintiff. *Glass v. Glass*, 228 Va. 39, 51 (1984).

Priority's claims for tortious interference in Counts II and III are proper because Priority pled and will be able to establish all the requisite elements of its claims. First, the Kimnach-Priority APA created a valid contractual relationship

and business expectancy between Priority and Kimnach, along with the probability of future economic benefit to Priority. (J.A. 32-99.) Next, Ford knew of the Kimnach-Priority APA and the business expectancy between Priority and Kimnach under the Kimnach-Priority APA's terms and conditions. (J.A. 181.) Third, Ford intentionally interfered and caused the termination of the Kimnach-Priority APA through the use of improper methods by violating Va. Code Ann. §§ 46.2-1569 and 1569.1 through its improper rejection of Priority's application and invalid exercise of a ROFR to terminate the dealership. *See* J.A. 18-20; J.A. 182-262; J.A. 280-306; J.A. 382; J.A. 384-388; J.A. 395-397; J.A. 402-405; J.A. 533-536; J.A. 538-540; J.A. 548-551; 553-555; J.A. 719-744; J.A. 749-801; J.A. 814-821. Absent Ford's improper turn-down and improper exercise of its ROFR, Priority would have successfully settled on the Kimnach-Priority APA. *See* J.A. 276-279; J.A. 401; J.A. 405-408; J.A. 410-11; J.A. 521-531. Finally, Ford's improper refusal to approve Priority as a buyer and its invalid exercise of the ROFR resulted in damages to Priority by disrupting its contractual relationship and business expectancy with Kimnach and preventing Priority from realizing the benefits from the Kimnach-Priority APA. *See Id*.

> b. *The District Court Erred in Not Applying the Standard for Impropriety set forth in Virginia Law*

The District Court's holding summarily concludes that Priority has no standing to claim tortious interference by Ford because it has no standing to

complain about Ford's invalid exercise of the ROFR in violation of § 46.2-1569.1. *See* J.A. 953-960. The Court failed to recognize that Priority's lawsuit is for improper rejection of a dealer applicant in violation of §§ 46.2-1569(3) and (3a), and it is not a suit for violation of § 46.2-1569.1.

Under § 46.2-1569(3a), the General Assembly required that a franchisor may only reject a dealer applicant for either (1) the grounds stated in § 46.2-1569(3) or (2) the lawful exercise of the ROFR "pursuant to § 46.2-1569.1." If the franchisor fails to reject the applicant dealer under the grounds in § 46.2-1569(3) or based on a <u>valid</u> exercise of a right of first refusal "pursuant to § 46.2-1569.1," the dealer applicant has standing to sue pursuant to § 46.2-1569(3a). Priority properly pled that Ford tortiously interfered contractually and with its business expectancy with its Asset and Real Estate Purchase Agreement with Kimnach and Julian Council because Ford's interference was improper and in violation of § 46.2-1569(3a).

Virginia law recognizes tort claims for improper interference with both contract and business expectancy. *See Chaves*, 230 Va. at 120; *See Glass*, 228 Va. at 51. Virginia recognizes the Restatement (Second) of Torts § 767[6], in determining whether the actor's actions were intentional and improper, which states:

---

[6] *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co*., 254 Va. 4 (1997).

> In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties."

Restatement (Second) of Torts § 767.

The Complaint (J.A. 9-22) met the requirements of Restatement (Second) of Torts § 767 by alleging Ford's improper means:

- Nature of Ford's conduct – Ford improperly rejected Priority as a buyer in violation of Va. Code § 46.2-1569(3) and (3a) without a valid exercise of the ROFR meeting the standard of Va. Code § 46.2-1569.1 to advance its own improper means of renegotiating a transaction on terms favorable to Ford to close down Kimnach Ford.  *See* J.A. 13-19.

- Ford's motive – In purporting to exercise the ROFR, Ford intended to invalidly reject Priority as a dealer applicant and did not intend to perform the Kimnach-Priority Buy/Sell Agreement but intended to renegotiate the terms under which it, through its assignee, would buy Kimnach to shut it down.  *See Id.*

- The interests of Priority – Ford's actions damaged Priority as alleged. *See Id.*

- The interests sought to be advanced by Ford – Ford unjustifiably rejected Priority as a dealer applicant and did not seek to perform the contract as to which it purported to exercise of right of first refusal, but it instead intended to control the opportunity presented by that contract to renegotiate terms advantageous to it and to shut down Kimnach. *See Id.*

- The social interests – Ford's actions were designed to reject a dealer applicant in violation of § 46.2-1569 and destroy a competitor in the marketplace, shutting down an important employer, thus damaging the public interest. *See Id.*

- Proximity of Ford's conduct to the interference – Ford's action stopped Priority in its tracks, terminated its rights, and permitted Ford to use the opportunity of the Kimnach-Priority Buy/Sell Agreement to negotiate a deal to close Kimnach. *See Id.*

- Relations of the Parties – Ford had only a right to consent or to not consent limited by Virginia law which it violated.  Its right was not an unlimited privilege.  It was not a party to the Priority-Kimnach contract. *See Id.*

The District Court speculated that the Supreme Court of Virginia would hold that Ford's invalid exercise of the ROFR and its related conduct to destroy Priority's rights and Kimnach would be proper under Virginia law.  (J.A. 959).  However, the District Court failed (1) to use the appropriate standard that the

32

exercise of the right of first refusal must be "pursuant to § 46.2-1569.1" in order for it to be valid rejection of a dealer applicant; (2) to recognize that Priority's claims for intentional and improper interference are a result of it being improperly rejected as a dealer applicant in violation of § 46.2-1569(3) and (3a); and (3) to recognize that the Supreme Court of Virginia has held that improper actions include actions that are not inherently tortious or illegal.

> While we have identified actions as improper which were also independently tortious or illegal (citations omitted), we have also identified action as improper which are not themselves tortious or illegal, such as unfair competition or unethical conduct. *(emphasis added)*

*Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 254 Va. 408, 414, 493 S.E.2d 375, 378 (1997).

The Virginia Supreme Court has stated that "'tortious interference' means only that the interference was intentional and improper under the circumstances, not that the 'improper methods' used were inherently illegal or tortious." *Wachovia Bank, N.A. v. Ranson Tyler Chevrolet, L.L.C. et al.*, 73 Va. Cir. 143, 151 (2007) (quoting *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 254 Va. 408, 414, 493 S.E.2d 375, 378 (1997) (finding that plaintiff's allegation of defendant's defamatory statements was sufficient to state a cause of action for tortious interference with a contractual expectancy, even though the defendant may have had a qualified privilege to make such statements)).

33

In deciding that Priority has no standing to bring a claim for tortious interference, the District Court contradicts the Supreme Court of Virginia's holding that the improper means do not need to be inherently illegal or tortious but rather just unethical under the circumstances, which is the situation in this case.

### III.    FORD IS NOT A PARTY TO THE ASSET PURCHASE AGREEMENT

Ford cannot claim that it is a party to the Kimnach-Priority APA just because it had a right to approve the transfer.  If it was a party to the asset purchase agreement, then Priority could have brought a breach of contract action, something to which Ford clearly would have objected.  *See McKinney v. Anheuser-Busch, Inc.*, 1991 U.S. App. LEXIS 30263 (9th Cir. 1991).  However, since Ford is not a party to the asset purchase agreement, but a third party, tortious interference is the proper claim.  *See Id.*

The District Court's holding essentially concludes that no franchisee or prospective buyer has standing to sue a franchisor for tortious interference claims. This conclusion is inconsistent with Virginia law as well as analogous law in many other states.

> *a. The Financial Interest Defense of Restatement (Second) of Torts § 769 is not an absolute privilege*

A franchisor, as a third party to the contract with the right to approve a transfer, has a privilege to consent or to not consent as constrained by law, but that

privilege does not include improper interference.   *See Morsani v. Major League Baseball*, 663 So.2d 653, 656 (Fla. 2d DCA 1995)( Florida law has recognized that where parties' approval were exercised outside the context of the proper exercise of their rights, plaintiffs had standing for actions for tortious interference with advantageous contractual and business relationships).

As explained in *Morsani*, a party with a financial interest or the ability to approve the transfer of a business has a privilege defense against tortious interference claims, but that privilege is not unlimited:

> It is clear that the privilege to interfere in a contract because of a financial interest is not unlimited. *Frank Coulson, Inc.-Buick v. General Motors Corp.*, 488 F.2d 202 (5th Cir. 1974). The better view is that it is necessary for the interfering party to have a financial interest in the business of the third party which is in the nature of an investment in order to justify the interference. Furthermore, a privilege to interfere with a third party's conduct does not include the purposeful causing of a breach of contract. *(emphasis added)*

*Morsani*, 663 So. 2d at 657 (citing *Yoder v. Shell Oil Co.*, 405 So. 2d 743, 744 (Fla. 2d DCA 1981)).

Here the District Court's ruling summarily converted a limited privilege defense into an absolute privilege that bars standing for the innocent victim – in this case, the actions of a franchisor to improperly interfere with a contract and business expectancy in violation of Virginia law.  *See* J.A. 953-960.  Virginia recognizes an affirmative defense, which the burden rests upon the defendant to

prove justification or privilege. *See Chaves v. Johnson*, 230 Va. 112, 121 (Va. 1985). Relying on Restatement (Second) of Torts § 769[7] as an affirmative defense of this action, the burden is on Ford to prove that the interference is justified and privileged. *See Id. Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F. 3d 204, 210 (4th Cir. 2001). Generally, the defense is "based upon the relationships between the parties and the balance to be struck between the social desirability of protecting the business relationship, on one hand, and the interferor's freedom of action on the other." *Chaves*, 230 Va. at 121. However, there is no Virginia case that clearly defines the parameters of the financial interest defense. *See Commerce Funding Corp.*, 249 F.3d at 210.

---

[7] It is questionable if Restatement (Second) of Torts § 769 financial interest defense even applies to Ford because it is a question of proof not pleading. In the commentary to the Restatement (Second) of Torts § 769, Section C states

> The financial interest in another's business requires for the rule stated in this Section is an interest in the nature of an investment. A part owner of the business, as for example, a partner or stockholder, has a least an interest of this nature. A bondholder or other creditor may also have it. On the other hand, the interest of a person who looks to a third person for the business and will lose business opportunities if that person enters into the business relations involves is nota a financial interest under the rule stated in this Section."

Therefore, Ford needs facts to prove that the financial interest affirmative defense is even applicable to them.

The District Court compared Virginia law and West Virginia law to essentially conclude that *McDonald's Corp. v. Turner-James*, No. 05-804, 2005 U.S. Dist. LEXIS 42755, at *14-15 (E.D. Va. Nov. 29, 2005) applies to this case. *See* J.A. 957-958. However, the *McDonald's* case is distinguishable from the facts of the instant case. It did not turn on an equivalent statute to the one at issue in this case, Section 46.2-1569, that established limits on the franchisor's consideration of an application of a potential franchise. In the instant case, Ford had no right to unreasonably reject the Kimnach-Priority APA without grounds for refusal as required under Section 46.2-1569. The one purported basis, the exercise of its ROFR, was invalid and thus did not constitute a valid condition on the approval of the Kimnach-Priority APA under subsection (3a) of the statute.

      b. *Persuasive Authority from other states reveals that Ford must prove that it was justified to interfere, which it did not do in the District Court*

Virginia law provides no guidance on the applicable substantive law, so the District Court only focused on the Restatement (Second) of Torts § 769 to conclude that Ford has a privilege to interfere because the exercise of the right of first refusal is not inherently improper.[8] *See* J.A. 959. However, the Restatement (Second) of Torts § 769 provides guidance in that "the predatory

---

[8] Incorrectly, the District Court improperly focused on whether the exercise of the right of first refusal is inherently improper rather than the issue sued upon, which was whether Priority was improperly rejected as a dealer applicant in violation of § 46.2-1569. *See* J.A. 18-19.

means discussed in § 767, Comment c, are usually tortious to the person directly affected by them, and wrongful under the rule stated in this Section."  In the case before this Court, Priority was directly affected by the wrongful and improper rejection of it as a dealer applicant in violation of § 46.2-1569.  *See* J.A. 18-19.  However, the District Court never examined the justification defense provided in Restatement (Second) of Torts § 769 in those states that recognize the Restatement (Second) of Torts §§ 766[9], 766B[10] and 767[11], like Virginia[12], and the cases

---

[9]          "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."

Restatement (Second) of Torts § 766

[10]        "One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation."

Restatement (Second) of Torts § 766B

[11]        "In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct

38

recognizing that once the interference is done improperly, it is tortious. In those other states, cases between franchisor, franchisees, and prospective purchasers reveal that franchisees and prospective buyers have standing to sue franchisors who are third parties to the asset purchase agreement. *See Morsani*, 663 So.2d at 656; *Northside Mercury Sales & Service Inc. v. Ford Motor Co*., 871 F.2d 758, 761 (1989); *McKinney v. Anheuser-Busch, Inc.*, 1991 U.S. App. LEXIS 30263 (9th Cir Ct. 1991); *Sade Shoe Company v. Oschin and Snyder*, 162 Cal. App. 3d 1174 (1984); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358 (3d Cir. 1992). Moreover, the cases reveal that the issue turns on whether franchisors' interference was justified and legal or improper and tortious.

In Minnesota, the United States District Court for the District of Minnesota applied Minnesota law that had adopted Restatement (Second) of Torts §§ 766B and 767 and held that Ford had tortiously interfered with a lease agreement between the dealership seller and buyer, which required Ford's approval. *See*

---

interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties."

Restatement (Second) of Torts § 767.

[12] *Duggin v. Adams*, 234 Va. 221 (1987); *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co*., 254 Va. 4 (1997); *Belena v. Air Line Pilots' Ass'n*, 31 Va. Cir. 413 (1993).

*Northside Mercury Sales & Service Inc. v. Ford Motor Co*., 871 F.2d 758, 761

(1989). In *Northside*, there was sufficient evidence that Ford was instrumental in

causing the prospective buyer's change of heart as to the length of the lease. See

*Id*.

> Whether or not Ford's actions rose to the level of
> interference, were intentional, or were justified turns
> upon issues of fact and inferences from the evidence
> presented.

See *Id*. at 762.

In California, Mendocino Coast Distributing Company agreed to sell its

tangible assets and to assign its right to distribute Anheuser-Busch products to

McKinney. *See McKinney v. Anheuser-Busch, Inc.*, 1991 U.S. App. LEXIS 30263

(9th Cir Ct. 1991). The assignment and distribution rights required Anheuser-

Busch's approval. *See Id*. Anheuser-Busch refused to give its consent and

McKinney filed suit for tortious interference with contractual relations. *See Id*.

In finding the district court erred in finding that Anheuser-Busch was not an

independent third party for purposes of the plaintiff's tortious interference claim,

the Ninth Circuit stated that Anheuser-Busch was an independent third party

because the source of the interest that the plaintiffs seek to purchase does not bind

Anheuser-Busch to the terms of the purchase agreement. See *Id*. Furthermore, the

Court held that the financial interest justification defense is generally a matter of

proof rather than pleading, so the court could not say from the face of the

40

complaint that the defendant did not act with a forbidden purpose when it interfered.   See *Id*.

As another example in *Sade Shoe Co. v. Oschin and Snyder*, 162 Cal. App. 3d 1174 (1984), the purchase of a shoe corporation was contingent upon approval by the lessor of the corporation's premises, who refused to consent, and the prospective purchaser sued for tortious interference.  *See Id.* at 1177.  According to California's appellate court in *Sade*, just because the lessor may have had a contractual right to refuse assignment but that did not defeat the plaintiff's claim because whether the lease provided the defendant with a basis for the defense of justification depended on the equities of the situation to be evaluated by the trier of fact.  *See Sade*, 162 Cal. App. 3d at 1179-80 ("The fact that the lease may have authorized defendant arbitrarily to withhold its consent to assignment does not resolve the issue whether such conduct on defendant's part was justified, thereby furnishing a defense to each of plaintiff's causes of action…The question on the issue of privilege is whether the actor's conduct was fair and reasonable under the circumstances, which is a question for determination by the trier of fact.").

In the case of *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358 (3d Cir. 1992), the plaintiff applicants sought to purchase the assets of a BMW dealership from a dealership owner who was about to lose her lease.  *Big Apple*, 974 F.2d at 1361. The dealership owner and plaintiff applicants negotiated and

reached an agreement for a price of $800,000 plus an undetermined amount for parts. *Id.* The BMW franchisor subsequently informed the dealership owner that it would not award a franchise to the plaintiff applicants, and only days before the expiration of the owner's lease, it offered her the significantly lower purchase price of $50,000, plus a repurchase of parts as required by the franchise agreement. *Id.* The owner accepted this BMW offer, and the franchisor closed the dealership. *Id.* The court considered Sections 766[13] and 766B[14] of the Restatement (Second) of Torts in determining whether the franchisor's conduct was "improper." *Big Apple*, 974 F.2d at 1381. It stated that under the Restatement, "the issue in each case is whether the interference is improper or not under the circumstances" and that "a determination of propriety requires inquiry into the 'mental and moral character of the defendant's conduct.'" *Id.* The court found that exercise of a right of first refusal in violation of law could constitute tortious interference. The *Big Apple* case involved violation of the antitrust laws and the court found that "conduct that is … in restraint of trade" may constitute "unprivileged, improper interference," such as the "[e]conomic pressure" that allegedly applied to the dealership owner when the franchisor bought the dealership at a significantly lower price than

---

[13] Recognized in *Dunn, McCormack & MacPherson v. Connolly*, 281 Va. 553, 708 S.E.2d 867 (2011).

[14] Recognized in *Maximus, Inc. v. Lockheed Info. Mgmt. Sys. Co.*, 254 Va. 4 (1997).

42

plaintiff applicants had offered "while suggesting that [the owner] had nothing to sell without its approval." *Id.* at 1382.

In all these cases, the defendants had rights to "approve" the agreement between the contracting parties, just like Ford had a right to approve the asset purchase agreement between Priority and Kimnach, but due to the improper means they took to interfere, their interference was tortious rather than privileged. The same standard applies in Virginia. The question is not one of standing, but one of a justified defense, which requires evidence and proof that Ford had the privilege to interfere in the manner it did. However, Priority submits that no such privilege exists in this case. Ford's interference was tortious, and that is the basis for a claim by Priority.

In its holding, the District Court speculated on what the Virginia Supreme Court would do with the tortious interference claims in this case. However, that speculation was unnecessary. Virginia's previous adoption of the Restatement (Second) of Torts § 767 answers the question. That simply requires improper means to maintain an action for tortious interference with contract and with business expectancy. That is precisely what Plaintiff pled in this case.

Moreover, based on its opposition to motion for summary judgment, the Plaintiff has shown in ample detail that Ford took its actions specifically with the intent to frustrate Priority's contract and Priority's business expectancy so that it

could shut down Kimnach. It had improper intent, it used improper means, and this supports the predicate for intentional interference under existing Virginia law.

## CONCLUSION

WHEREFORE Appellant Priority Auto Group, Inc. respectfully requests that this Honorable Court reverse the judgment of the District Court below granting dismissal with prejudice of Counts I through III of Priority's Complaint in favor of Appellee Ford Motor Company and remand this case to the District Court for further proceedings.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Fed. R. App. P. 34(a), Appellant requests the opportunity to present oral argument before the Court.

Respectfully submitted,

/s/ Michael G. Charapp
Brad D. Weiss (VSB 22389)
Michael G. Charapp (VSB 14329)
Charapp & Weiss, LLP
8180 Greensboro Drive, Suite 1000
McLean, Virginia 22102
(703) 564-0220 (office)
(703) 564-0221 (facsimile)
brad.weiss@cwattorneys.com
mike.charapp@cwattorneys.com

*Counsel for Appellant*

# <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*10,485*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: July 22, 2013            /s/Michael G. Charapp
                                *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 22nd day of July, 2013, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Christopher T. Handman
> Sean Marotta
> HOGAN LOVELLS US LLP
> 555 Thirteenth Street, N.W.
> Washington, D.C.  20004
> (202) 637-5719
>
> *Counsel for Appellee*

I further certify that on this 22nd day of July, 2013, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court.

/s/ Michael G. Charapp
*Counsel for Appellant*
